IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **In re HEALTHSOUTH SECURITIES** | ) | |
| **LITIGATION** | ) | CV-03-BE-1500-S |
| _____ | ) | |
| **This Document Relates to: All Actions** | ) | |

## MEMORANDUM OPINION

Currently pending before the court are the motions to dismiss the second amended complaint filed by the UBS Defendants[1] ("UBS") (docs. 247 & 499) and the motion to dismiss the second amended complaint filed by Ernst & Young, LLP ("E&Y") (doc. 257). For the reasons stated below, the court reaffirms for the time being its January 23, 2007 oral ruling with respect to UBS's motion to dismiss count IX of the stockholder plaintiffs' joint second amended complaint and count L of the bondholder plaintiffs' joint second amended complaint alleging violations of Rule 10b-5(a), (b), and (c); accordingly, UBS's motion to dismiss counts IX and L based on scheme liability under Rule 10b-5(a) and (c) and based on alleged violations of Rule 10b-5(b) that accrued after July 30, 1999 is DENIED. The court, however, will reexamine this ruling after the Supreme Court decides *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43, and, if it grants *certiorari*, *Regents of the Univ. of Cal. V. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 06-1341. The court likewise does not alter that portion of its January 23, 2007 oral ruling that the stockholder plaintiffs, in count IX, and the bondholder plaintiffs, in count LI, alleged primary violations of Rule 10b-5(b) against E&Y based on material misstatements contained in publicly disseminated audit reports issued after March 30, 2000;

---

[1] The UBS Defendants are comprised of UBS, AG, UBS Securities LLC, and individual defendants Howard Capek, Benjamin Lorello, and William McGahan.

accordingly, E&Y's motion to dismiss claims IX and LI is also DENIED.  UBS's motion to dismiss counts IX-XII and XXI-XXIV, however, is DENIED IN PART and GRANTED IN PART.  These counts will proceed on the bondholder plaintiffs' "substantial participation" theory of liability.

## I. INTRODUCTION AND PROCEDURAL HISTORY

Because of the complex nature of this case, the court has addressed various aspects of E&Y's and UBS's motions to dismiss the stockholder and bondholder plaintiffs' second amended complaints in a series of separate orders.  On June 14, 2006, the court granted E&Y's motion to dismiss counts II and V of the stockholder plaintiffs' joint second amended complaint alleging violations of section 11 of the Securities Act of 1933; however, the court denied E&Y's motion to dismiss all of the stockholder plaintiffs' claims under section 10(b) of the Securities Exchange Act of 1934 alleged in count IX of the joint second amended complaint, holding that the statute of limitations would not preclude the plaintiffs from asserting alleged violations of section 10(b) that accrued after July 30, 1999.  *See* doc. 471.

On that same date, the court denied UBS's motion to dismiss all of the stockholder plaintiffs' section 10(b) claims alleged in count IX of the joint second amended complaint, holding that the statute of limitations would not preclude the plaintiffs from asserting alleged violations of section 10(b) that accrued after July 30, 1999.  The court also denied UBS's motion to dismiss count XIII of the stockholders' joint second amended complaint alleging a violation of section 20(a) of the Securities Exchange Act of 1934.  *See* doc. 472.

On June 30, 2006, the court addressed E&Y's and UBS's motions to dismiss various counts contained in the bondholder plaintiffs' joint second amended complaint.  Based on the applicable statute of limitations, the court granted E&Y's motion to dismiss counts XXV and

XXVI of the complaint alleging violations of section 11 of the Securities Act of 1933 and granted its motion to dismiss count LI as to any alleged violations of section 10(b) of the Securities Exchange Act of 1934 that accrued before July 30, 1999.  The court, however, denied E&Y's motion to dismiss counts XXVII-XXX of the complaint alleging violations of section 11 of the Securities Act of 1933 and denied its motion to dismiss all of the bondholder plaintiffs' section 10(b) claims alleged in count LI, holding that the statute of limitations would not preclude the plaintiffs from asserting alleged violations of 10(b) that accrued after July 30, 1999. *See* doc. 479.

On that same date, the court granted UBS's motion to dismiss counts VII and VIII contained in the bondholder plaintiffs' joint second amended complaint alleging violations of section 12 of the Securities Act of 1933 and counts XIX and XX alleging violations of section 11 of the Securities Act of 1933 on statute of limitations grounds.  The court, however, denied UBS's motion to dismiss count LIII of the bondholder plaintiffs' complaint alleging a violation of section 20(a) of the Securities Exchange Act of 1934 and denied its motion to dismiss count IX alleging a violation of Section 12 of the Securities Act of 1933 and count XXI alleging violation of section 11 of the Securities Act of 1933.  Lastly, the court denied UBS's motion to dismiss all of the bondholder plaintiffs' section 10(b) claims alleged in count L, holding that the statute of limitations would not preclude the plaintiffs from asserting alleged violations of 10(b) that accrued after July 30, 1999.  *See* doc. 478.

As this narrative indicates, the court has invested substantial time and judicial resources to address systematically each aspect of the novel and complex issues raised by the complaint, as amended, and E&Y's and UBS's motions to dismiss.  On January 23, 2007, the court heard oral argument on the three remaining issues on which it had reserved ruling in its prior orders: (1)

whether the stockholder and bondholder plaintiffs' section 10(b) claims alleged in counts IX, L, and LI against UBS and E&Y are impermissible claims for aiding and abetting explictly foreclosed by the Supreme Court's decision in *Central Bank v. Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), and the Eleventh Circuit's opinion in *Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194 (11th Cir. 2001); (2) whether the bondholder plaintiffs can sustain claims against UBS as an underwriter of securities pursuant to section 11 as alleged in counts XXI-XXIV, or as an seller of securities pursuant to section 12 as alleged in counts IX-XII, based on an "integration theory" of liability that would essentially nullify the *Exxon/Capitol* Exchange Structure utilized in the bond offerings at issue in this case; and (3) whether the bondholder plaintiffs can sustain claims against UBS as an underwriter of securities pursuant to section 11 as alleged in counts IX-XII, or as an seller of securities pursuant to section 12 as alleged in counts XXI-XXIV, under on a "substantial participation" theory that would impute liability to UBS based on its alleged direct and substantial participation in registration statements utilized in the second or "exchange" step of the *Exxon/Capitol* Exchange Structure.

To avoid undue delay in the final resolution of the motions to dismiss, the court, upon the offer of Plaintiffs' counsel, ordered the parties to submit a proposed order that accurately summarized the court's January 23, 2007 oral rulings. *See* doc. 598. The parties were to submit an agreed-upon proposed order for the court's review and entry on or before March 13, 2007. Unfortunately, the spirit of cooperation urged by the court did not prevail, and the parties were unable to provide the court with a proposed order that comprehensively described the court's January 23, 2007 oral rulings.

In the meantime, the Fifth Circuit issued its opinion in *Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372 (5th Cir. 2007), in which it reversed a

district court decision – the rationale of which this court relied heavily upon in making its oral rulings.  *See In re Enron Corp. Securities*, 2006 WL 4381143 (S.D. Tex. June 5, 2006), *subsequent determination at*, 236 F.R.D. 313 (S.D. Tex. 2006), *rev'd and remanded sub nom.*, *Regents of the Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372 (5th Cir. 2007).  In the light of *Regents*, this court *sua sponte* reconsidered its January 23, 2007 oral rulings and concludes that the rationale of *Regents* casts serious doubt upon the validity of its oral ruling with respect to UBS's motion to dismiss counts IX and L alleging violations of Rule 10b-5(a) and (c).  The *Regents* plaintiffs filed a petition for writ of *certiorari* to the U.S. Supreme Court on April 5, 2007.  In addition, ten days prior to that petition, the Supreme Court granted *certiorari* in  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, No. 05-1974, which presents the same question as *Regents*.  Oral argument in *Stoneridge* is presently scheduled for October 9, 2007.  At this time, therefore, the court will not alter its January 23, 2007 oral ruling, but will instead await the Supreme Court's decision in *Stoneridge* and/or *Regents*.  This action does not prejudice UBS because UBS will remain in the case for alleged violations of Rule 10b-5(b) that accrued after July 30, 1999 even if the court were to vacate the portion of its oral ruling concerning alleged violations of Rule 10b-5(a) and (c).

## II. CONCLUSIONS OF LAW

For the reasons explained more fully below, the court finds as follows:

(1) The court questions whether its oral ruling of January 23, 2007 with respect to UBS's motion to dismiss counts IX and L of the stockholder and bondholder plaintiffs' joint second amended complaints alleging violations of Rule 10b-5(a) and (c) is valid under the rationale of *Regents*, a non-controlling, yet extremely persuasive, case decided after the hearing on the defendants' remaining motions to dismiss.  Nonetheless, the court will not modify its oral ruling

until the Supreme Court clarifies the application of scheme liability under Rule 10b-5(a) and (c) in either *Stoneridge* or *Regents*.  Likewise, the court does not alter that portion of its January 23, 2007 oral ruling that the stockholder and bondholder plaintiffs alleged *primary violations* of Rule 10b-5(b) against E&Y in counts IX and LI based on material misstatements contained in publicly disseminated audit reports issued after March 30, 2000.[2]  Accordingly, UBS's and E&Y's motions to dismiss counts IX, L, and LI are denied.

At the January 23, 2007 hearing, the court denied UBS's and E&Y's motions to dismiss counts IX, L, and LI of the stockholder and bondholder joint second amended complaints alleging violations of section 10(b) of the Securities Act of 1933.  Based on the parties' arguments and the authorities cited in their respective briefs, including *Enron*, 2006 WL 4381143, the court concluded that the plaintiffs' allegations against UBS were not impermissible claims for "aiding and abetting" foreclosed by the holdings of *Central Bank*, 511 U.S. 164, and *Ziemba*, 256 F.3d 1194; instead, the court concluded that the complaint alleged primary violations of Rule 10b-5(b) against UBS based on material misstatements contained in publicly disseminated analyst reports and primary violations of Rule 10b-5(a) and (c) for deceptive or manipulative conduct in furtherance of a scheme to defraud.  Similarly, the court orally ruled that the stockholder and bondholder plaintiffs alleged primary violations of Rule 10b-5(b) against E&Y based on material misstatements contained in publicly disseminated audit reports issued after March 30, 2000 upon which the stockholder and bondholder plaintiffs allegedly relied.

---

[2] The court notes that the plaintiffs have not alleged any claims for scheme liability against E&Y.  Instead, the plaintiffs' claims against E&Y are based on alleged material misrepresentations contained in publicly disseminated audit reports issued after March 30, 2000 upon which the stockholder and bondholder plaintiffs allegedly relied.  Thus, any subsequent Supreme Court decision in *Stoneridge* or *Regents* would not affect the court's decision with respect to E&Y.

-7-

In reaching its conclusions about UBS's potential culpability for scheme liability, the court analyzed the Supreme Court's decisions in *Central Bank* and *Zandford v. SEC,* 535 U.S. 813, 820 (2002)*,* and the Eleventh Circuit's decision in *Ziemba.*  Although acknowledging *Ziemba's* holding that secondary actors are liable under section 10(b) when the alleged misstatement or omission upon which a plaintiff relied is publicly attributable to the defendant at the time of the plaintiff's investment decision, this court interpreted *Ziemba* within the context of the Supreme Court's reasoning in *Zandford.*  In *Zandford*, the Court suggested that liability under section 10(b) can extend beyond a misstatement about value.  535 U.S. at 819-20.  More importantly for the viability of the plaintiffs' scheme liability claims in this case, the Supreme Court in *Zandford* reasoned that Rule 10(b) should not be "construed technically and restrictively, but flexibly to effectuate its remedial purposes."  *Zandford*, 535 U.S. at 819 (internal citations and quotations omitted).

In denying UBS's motion to dismiss, the court was persuaded by the plaintiffs' allegations that UBS, at a time when Capek, Lorello, and McGahan allegedly *knew* of the accounting fraud and thus took actions to shield it, (1) suggested that HealthSouth utilize the *Exxon/Capitol* Exchange Structure to further shield discovery of the accounting fraud and even drafted circulars containing deceptive information for the private placements in connection with the six bond offerings at issue in this case; (2) bought the majority of the debt sold to qualified institutional buyers through the *Exxon/Capitol* Exchange Structure, despite their knowledge of the vast accounting fraud occurring at HealthSouth; (3) advised the repurchase of HealthSouth stock in mid-1999 and 2002 with the intent to inflate artificially HealthSouth's stock price; (4) controlled the flow of information between HealthSouth and those with questions about the private placements; and (5) prepared a script for McVay to anticipate questions from other

bankers regarding the need for an extension on the line of credit despite HealthSouth's supposed on-hand cash of $400 million.

Like Judge Harmon in *Enron*, 2006 WL 4381143, this court interpreted section 10(b) broadly during the January 23, 2007 hearing and held that these allegations sufficiently alleged a primary violation of section 10(b) against UBS. The court primarily based its ruling upon *Zanford's* endorsement of an expansive construction of section 10(b); the language in *Central Bank* indicating that, in some circumstances, secondary actors such as investment banks and accountants can be primarily liable under section 10(b); and the plain language of Rule 10b-5(a) and (c). The court reaffirms its ruling based on its understanding of these principles.

Given the Fifth Circuit's intervening decision in *Regents*, however, the court questions its January 23, 2007 oral ruling denying UBS's motion to dismiss counts IX and L alleging violations of Rule 10b-5(a) and (c). In *Regents*, the Fifth Circuit held that the district court erroneously certified a class of plaintiffs who purchased Enron securities between October 19, 1998, and November 27, 2001. 482 F.3d at 379. The plaintiffs in *Regents* alleged a far-reaching fraudulent scheme designed to take liabilities off Enron's books temporarily to create the appearance that Enron was generating revenue when it was actually incurring debt. *Id.* at 377. According to the plaintiffs, the investment banks were culpable because they (1) knew that Enron was engaging in transactions that misstated its earnings; (2) were aware of the personal compensation Enron executives received based on inflated stock; and (3) intended to profit by helping the executives maintain that illusion of profitability. *Id.* at 377.

In its class certification order, the district court held that the plaintiffs satisfied the predominance requirement of Federal Rule of Civil Procedure 23 because the investment bank defendants committed a deceptive act in violation of Rule 10b-5(a) based on their participation in

-8-

a "transaction whose principal purpose and effect is to create the false appearance of revenues." *Regents*, 482 F.3d at 372.  The district court also held that Rule 10b-5(a)'s language prohibiting a scheme to defraud created joint and several liability for defendants who committed individual acts of deception in furtherance of a scheme to defraud.  *See id.* at 378.

The Fifth Circuit reversed the district court, reasoning that the district court's conclusion that the investment bank defendants committed a deceptive act in violation of Rule 10b-5(a) demonstrated a fundamental misunderstanding of securities law.  *Regents*, 482 F.3d at 386.  In so holding, the court examined section 10(b) within the context of Supreme Court decisions interpreting its statutory text.  *Id.* at 386-87, *citing Cent. Bank*, 511 U.S. at 177 (declaring that section 10(b) does not give rise to "aiding and abetting" liability); *Santa Fe Indus., Inc. v. Green* 430 U.S. 462, 476 (1977) (explaining that the term "manipulative" is a term of art referring to such practices as wash sales, matched orders, or rigged prices).  The Fifth Circuit reasoned that the district court erred "by ascribing, natural, dictionary definitions" to define the type of deceptive conduct encompassed by Rule 10b-5(a) instead of analyzing the investment banks' conduct in accordance with previously established Supreme Court precedent. *Id.* at 387.

According to the Fifth Circuit, the district court's definition of deceptive conduct was unduly broad because the investment banks' allegedly deceptive conduct "at most aided and abetted Enron's deceit by making its misrepresentations more plausible.  The banks' participation in the transactions, regardless of the purpose or effect of those transactions, did not give rise to primary liability under §10(b)."  *Regents*, 482 F.3d at 390 (footnote omitted).  Consequently, the *Regents* decision fell squarley in line with those Circuit Courts holding that deceptive conduct that establishes a primary violation of liability under section 10(b) involves either a misstatement

or a failure to disclose by one who has a duty to disclose. *Id.* at 388 (citing *In re Charter Commuc'ns, Inc., Sec. Litig.*, 443 F.3d 987, 992 (8th Cir. 2006)).

Although the court finds the Fifth Circuit's rationale compelling, the court will not, at this time, alter its January 23, 2007 oral ruling with respect to UBS's motion to dismiss counts IX and L of the joint second amended complaints alleging violations of Rule 10b-5(a) and (c). Because the U.S. Supreme Court has received two petitions for writs of *certiorari* to clarify scheme liability under Rule 10b-5(a) and (c), the court concludes that prudence requires awaiting further developments before altering its prior ruling. Although the Supreme Court has not yet granted *certiorari* in *Regents*, it will hear oral arguments on October 9, 2007, in *Stoneridge*, which presents the same question. Accordingly, the court will deny UBS's motion to dismiss at this time, but will reconsider this ruling after the Supreme Court's decision in one or both of these cases.

(2) The court denies in part and grants in part UBS's motion to dismiss counts IX-XII of the bondholder plaintiffs' second amended complaint alleging violations of section 12 of the Securities Act of 1933. Specifically, the motion is denied as to the bondholder plaintiffs' "substantial participation" theory of liability imputing liability to UBS based on its alleged direct and substantial participation in registration statements utilized in the second or "exchange" step of the *Exxon/Capitol* Exchange Structure. In so holding, however, the court rejects the bondholder plaintiffs' "integration theory of liability,"[3] and grants the motion as to that theory.

---

[3] As the court stated on the record at the January 23, 2007 hearing, given the SEC's November 28, 2006 letter and the dearth of case law authority supporting the bondholder plaintiffs' arguments, the court has no legal basis to sustain bondholder plaintiffs' section 11 and 12 claims against UBS under an integration theory of liability.

The court will revisit the viability of the "substantial participation" theory of liability at the summary judgment stage of these proceedings.

### III. CONCLUSION

For the reasons discussed above, the UBS Defendants' motion to dismiss claims IX and L is DENIED.  UBS's motion to dismiss counts IX-XII and XXI-XXIV, however, is DENIED IN PART and GRANTED IN PART.  These counts will proceed on the bondholder plaintiffs' "substantial participation" theory of liability.  E&Y's motion to dismiss counts IX and LI is DENIED.  The court will enter a separate order consistent with this memorandum opinion.

DATED this 6th day of September, 2007.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE